```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

WAYNE DENARD JORDAN,

                Plaintiff,

vs.                              Case No. 2:09-cv-177-FtM-36DNF

OFFICER R. COLON and OFFICER A. GUARINO,

                Defendants.

_____/

## **OPINION AND ORDER**

### **I. Status**

    This matter comes before the Court upon review of the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed on behalf of Defendant Guarino (Doc. #62, Guarino Motion) and Motion for Summary Judgment filed on behalf of Defendant Colon (Doc. #63, Colon Motion). Defendant Guarino attaches the following documentation in support of his Motion: Exhibit A, Plaintiff Jordan's FDOC Internal Movements from 05/22/06 to 04/10/07 (Doc. #62-1); Exhibit B, Declaration of Anthony Guarino (Doc. #62-2); Exhibit C, Formal Grievance, Log No. 07020510-137 (Doc. #62-3); Exhibit D, Grievance Appeal, Log No. 07-6-06547 (Doc. #62-4); Exhibit E, Formal Grievance, Log No. 0702-510-143 (Doc. #62-5); Exhibit F, Grievance Appeal, Log No. 07-6-05826 (Doc. #62-6); Exhibit G, Informal Grievance, Log No. 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 (Doc. #62-7); Exhibit H, Formal Grievance, Log No. 0703-510-059 (Doc. #62-8); Exhibit I, Grievance Appeal, Log No. 07-6-08192 (Doc. #62-9);

Exhibit J, Incident Report No. SEC07-0354 (Doc. #62-10); Exhibit K, Incident Report No. SEC07-0354A (Doc. #62-11); Exhibit L, Affidavit of Dr. Ronald Solorzano-Pallais attaching Plaintiff's medical records from 01/09/07-07/12/07 (Doc. #62-12); Exhibit M, Affidavit of Ms. Janene McLaughlin, prison inspector attaching IG Report Case No. 07-5-0459 (Doc. #62-13); Exhibit N, Affidavit of Mr. James Mitchell, prison inspector attaching IG Report Case No. 07-5-0481 (Doc. #62-14); Exhibit O, Declaration of Raymond Colon (Doc. #62-15); and, Exhibit P, Declaration of Inmate Xzavius Dordon (Doc. #62-16). Defendant Colon attaches the following documentation in support of his Motion: Exhibit A, Plaintiff Jordan's FDOC Internal Movements from 05/22/06 to 04/10/07 (Doc. #63-1); Exhibit B, Declaration of Raymond Colon (Doc. #63-2); Exhibit C, Incident Report No. SEC07-0354 (Doc. #63-3); Exhibit D, Incident Report No. SEC07-0354A (Doc. #63-4); Exhibit E, Affidavit of Dr. Ronald Solorzano-Pallais attaching Plaintiff's medical records from 01/09/07-07/12/07 (Doc. #63-5); Exhibit F, Affidavit of Ms. Janene McLaughlin, prison inspector attaching IG Report Case No. 07-5-0459 (Doc. #63-6); Exhibit G, Affidavit of Mr. James Mitchell, prison inspector attaching IG Report Case No. 07-5-0481 (Doc. #63-7); Exhibit H, Declaration of Anthony Guarino (Doc. #63-8); and, Exhibit I, Declaration of Inmate Xzavius Dordon (Doc. #63-9). Accordingly, the Court construes the Motions as brought pursuant to Federal Rule of Civil Procedure 56. Plaintiff was previously

advised of how to respond to a Rule 56 motion, and filed a consolidated response in opposition to the Motions (Doc. #65, Response), attaching his own affidavit (Doc. #65-1, Pl's Aff.) in support. This matter is ripe for review.

## II. BACKGROUND

Plaintiff, who remains incarcerated within the Florida Department of Corrections, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. #1, "Complaint") against Defendants Guarino and Colon stemming from an incident that occurred while Plaintiff was confined at Charlotte Correctional Institution. According to the Complaint and attachments thereto, Plaintiff was attacked by inmate Xzavius Dordon ("Dordon") on February 16, 2007. Complaint at 8. Plaintiff avers that the attack was "an intentional and prearranged attack . . . orchestrated" by Defendant Colon. *Id*. Plaintiff claims that while being escorted to the showers by Defendant Guarino, an unidentified officer in the control room released the lock on Dordon's cell. *Id.* at 9. Dordon "ran from his cell directly toward [Plaintiff] with a home-made weapon in [the] shape of a sharp pointed ice pick." *Id.* According to Plaintiff, Defendant Guarino "stepp[ed] out of the way" to permit Dordon access to Plaintiff "to intentionally stab [Plaintiff] twice in the neck with the intentions of securing fatal results." *Id*. Plaintiff further

avers that Defendant Guarino "failed to intervene to assist [him]" during the attack. *Id*.

According to the grievance form Plaintiff submitted to correctional officials, Defendant Colon arranged the attack on Plaintiff because Plaintiff and Defendant Colon had an "exchange of words" on a "previous occasion." Doc. #1-2 at 1. Plaintiff states that "[d]ue to this attempt on [his] life, he has experienced "mental despair," "mental anguish," and "emotional depress," [sic] and "could not fully rotate [his] neck for over a month following the stabbing." Complaint at 9. As relief, Plaintiff seeks monetary damages in the amount of $150,000.000 from each Defendant and requests that both Defendants "be fired and be prevented from ever obtaining a job with the State." *Id*. at 10.

### III. Applicable Law

**A. Summary Judgment**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008); *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Penley*, 605 F.3d 848. A genuine dispute requires more than "some metaphysical doubt as to the material facts." *Id*. The standard for creating a

genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment, *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." *Teblum v. Eckerd Corp. of Fla., Inc.*, 2:03-cv-495-FTM-33DNF, 2006 WL 288932 *1 (M.D. Fla. Feb. 7, 2006). Instead, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Sec'y Dep't of the Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004)(citing *Anderson*, 477 U.S. at 247-48).

The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exist that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" *Pittman v. Tucker*, 213 Fed. Appx. 867, 870 (11th Cir. 2007)(quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, *i.e.*,

affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Here, Plaintiff, as the party opposing summary judgment, is not entitled to rest upon the mere allegations contained in his Complaint. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Walker v. Darby*, 911 F.2d 1573, 1577-78 (11th Cir. 1990). Instead, Plaintiff is required to go beyond his Complaint and, through affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that a genuine issue remains for trial. *Jeffery*, 64 F.3d at 593-94.

If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences", *Anderson*, 477 U.S. at 255, must be drawn in favor of the non-moving party, but those inferences are drawn "only to the extent supportable by the record," *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010)(citation omitted). The court, however, "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, [the court's] inferences must accord deference to the views of prison

authorities." *Beard*, 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. Sch. Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

**B. Failure to Protect/Eighth Amendment**

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir. 2003)(quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Consequently, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* (citations and alternations omitted). "It is not, however, every injury suffered

by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* (citations omitted). Similar to demonstrating deliberate indifference to a medical condition, a constitutional violation for failing to protect an inmate occurs only when the officers: (1) were aware of "a substantial risk of serious harm" to the inmate; and, (2) failed to "respond reasonably to the risk." *Id.* (citations omitted). Further, "the known risk of injury must be a strong likelihood, rather than a mere possibility." *Terry v. Bailey*, 376 F. App'x 894, 898 (11th Cir. 2010)(quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

Thus, in the context of a summary judgment motion, a plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and, (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### IV. Findings of Fact and Conclusions of Law

Plaintiff attributes liability on Defendants for

> (1) failing to assure that Inmate Dordon was secured inside his assigned cell prior to the attack on Plaintiff; (2) failing to properly physically escort Inmate Dordon under physical restraint and detention of Defendant Colon and/or Guarino; (3) failing to assure that Inmate Dordon was handcuffed and restrained in compliance with Department of Corrections security policy and procedures prior to and during the time of attack of Plaintiff; (4) failing to assure that Department of Corrections security operations and procedures were

complied with regarding escorting of inmates in the
confinement unit at the time of the attack on Plaintiff
to assure the safety and well-being of [Plaintiff].
Response at 2, ¶4.

Plaintiff further contends that "had Defendant Colon and Guarino followed security procedures and properly secured inmate Dordon the attack would not have occurred and Plaintiff would not have ben stabbed." *Id.*, ¶5.

At the outset, assuming *arguendo* that Plaintiff can prove more than a *de minimis* injury, neither Defendant Colon nor Defendant Guarino are liable for monetary damages in their official capacities because they are entitled to sovereign immunity under the Eleventh Immunity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Further, to the extent that Plaintiff attributes a constitutional violation predicated upon either Defendant Colon or Defendant Guarino's failure to adhere to the policies or procedures set forth by the Department of Correction, this allegation without more, is insufficient. *Harris v. Birmingham Bd. Of Educ.*, 817 F.2d 1525, 1527 (11th Cir. 1987)(noting that violation of a state statute does not equate to a constitutional violation); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)(recognizing that "[t]he simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.")(internal quotations and citations omitted).[1] The

---

[1]According to Defendant Guarino, after he secured "Dordon" in
(continued...)

Court will now evaluate Plaintiff's claim based upon the record before the Court.

**A. Undisputed Facts**

Plaintiff does not dispute the following facts, which are set forth in Defendant Colon's Statement of Facts. Response ¶3, ¶7.

> 1. On 02/16/07, Officer A. Guarino submitted a signed statement for incident report no. SEC07-0354 where he stated in pertinent part,
>
>> On February 16, 2007 at approximately 8:31 pm, while assigned as a B Dormitory Officer, I was conducting showers and shaves in quad two. I was escorting Inmate Jordan, Wayne #X10757 down the stairs by cell B2114 when I observed Inmate Dordon, Xzavius #M42950 standing near the bottom of the stairs by the shower with his hands behind back. Once Inmate Jordan and I were near the bottom of the stairs, Inmate Dordon, who was unrestrained, reached over the railing with his right hand and began stabbing Inmate Jordan in the back of his neck with an ice pick type weapon while yelling, "Get rich or die, get rich or die." I immediately placed both of my hands on Inmate Dordon's chest and pushed him away from Inmate Jordan. I then gave Inmate Dordon several direct verbal orders to drop the weapon. Inmate Dordon did not comply. I removed my issued MK-4 OC chemical agent canister [sic] the hoister and ordered Inmate Dordon again to drop the weapon. Inmate Dordon then dropped the weapon on the floor and walked back to his assigned cell, B2113 and secured the door himself. Sergeant Case Colon secured Inmate

---

[1](...continued)
his cell number B2113, he proceeded to take Plaintiff, named "Jordon" to the shower and requested the control room to open Jordon who was located in cell number B2213. Doc. #62-2 at 2, ¶10. The Court can comprehend how the control room could have mistaken the name Jordon for Dordon, or could have mistaken the cell numbers B2213 with B2113.

Jordan in his assigned cell, B2213. At approximately 8:42 pm hand held video camera B-1 was initiated. At approximately 8:47 pm Inmate Jordan was escorted to medical exam room in the dormitory where he was assessed by medical and was secured back in his cell at approximately 9:07 pm. (Def. Ex. C). On this incident report, the shift supervisor noted on 02/16/07 that Jordan was assessed by medical for two puncture wounds on the back of his neck and that it was determined the wounds did not require outside medical attention; and the correctional officer chief noted on 02/19/07 that "[t]he use of force appears to follow proper procedure." (*Id.*).

2. On 02/16/07, Sergeant Colon submitted a signed statement for incident report no. SEC07-0354A where he stated, February 16, 2007 at approximately 8:31 pm, while assigned as B Dormitory supervisor, I was conducting a security check upstairs in quad 2 when I heard Officer Guarino call for assistance. I then responded by cell B2213 and observed Inmate Jordan, Wayne #X10757 running up the stairs. I escorted inmate Jordan to his assigned cell, B2213 at which time he informed me that he had been stabbed. I observed two puncture wounds to the back of his neck, which did not appear to be life threatening. I then secured the door and went to assist Officer Guarino. I observed an ice pick type weapon laying on the floor by the stair adjacent to cell B2114. I secured the weapon in my left pocket and called for assistance. Officer Guarino then informed me that Inmate Dordon, Xzavius #M42950 had used the weapon the [sic] stab Inmate Jordan in the back of his neck. I then turned the weapon over to Officer Hammerbacher to give to Lieutenant Harris, who responded to the incident. (Def. Ex. D).

3. Jordan's medical records reflect that the attack only resulted in a minor pinpoint prick with a pin drop of blood. (Def. Ex. E; *see id.* at 2, 6.) The wounds necessitated only treatment by a nurse on 02/16/07 with a follow up by a physician on 02/19/07. (Id. at 2, 5-7, 13). On 02/16/07, the nurse cleaned the wounds, applied dressing, and provided Jordan with a tetanus immunization and antibiotics as a preventative treatment for punctured skin. (*Id.*). By 02/19/07, the skin was healing with a dry scab. (Def. Ex. E at 2, 5-7, 13). Further, the

records show no limitation of movement within Jordan's neck. (*Id*.).

4. Thereafter, an Inspector General ("IG") investigation, case no. 07-5-0459, was conducted by Inspector J. McLaughlin who interviewed the witnesses and reviewed the fixed wing camera video footage of B Dormitory, quad 2 ("Fixed Wing Video"), Jordan's medical records, and photographs of the injuries and weapon. (Def. Ex. F). Inmate Dordon refused to make a statement, while the following witnesses provided a sworn statement: Officers Guarino and T. Kovell, Sergeant Colon, and inmates B. Smith (FDOC# 348747) and Jordan. (*Id*.). Consequently, on 05/02/08, Dordon was adjudicated guilty of aggravated battery, § 784.045, F.S. based on his plea of *nolle contendre*, and sentenced to 9 years (*id*. at 3-4, 7-8, 12) in Charlotte County case no. 2007-CF-865, see FDOC's Offender Search Page, supra (FDOC# M42950).

5. Inspector McLaughlin specified that the Fixed Wing Video showed Dordon exited his cell to the barber, he returned to his cell without a shave or haircut, then Guarino went to Jordan's cell to escort him down the stairs, Dordon opened his cell door, Jordan and Guarino reached the bottom, Dordon reached over the railing and attacked Jordan, and Guarino stepped between them, pushing Dordon away. (Def. Ex. F at 2, 12).

6. McLaughlin further specified that Jordan's medical records revealed two superficial stab wounds that were treated by Charlotte CI medical staff, photographed, and did not require outside medical treatment. (*Id*. at 3, 12, 16-18). The weapon was 6 ½" long, was photographed, and was constructed from a ink pen shell for its handle with a piece of chain link fencing material inserted into the ink pen shell. (*Id*. at 3, 12, 19-20).

7. Upon being interviewed by McLaughlin, inmate Smith, the barber, stated that Dordon was brought to him for a haircut but he did not have the proper clipper blade; was placed back into his cell; came out of his cell, appearing "playful," not threatening; stabbed Jordan; and dropped the weapon after Guarino stepped between them. (Def. Ex. F at 3, 12).

8. After the attack, Jordan alleged that Sergeant Colon set up the stabbing, and provided Dordon with the weapon used for the attack, so, to investigate the allegations,

a second IG investigation was initiated, case no. 07-5-0481, and was conducted by Inspector J. Mitchell who interviewed witnesses and reviewed the Fixed Wing Video. (Def. Ex. G). Inmates Dordon and Smith refused to make a statement, while the following witnesses provided a sworn statement: Jordan, Officers Guarino, J. Krosnowski, and Kovell, and Sergeant Colon. (*Id*.).

9. During Jordan's interview, he alleged that several weeks before the 02/16/07 attack, Colon was conducting a security check when several inmates were verbally yelling at him; Colon returned back into the dormitory, appeared angry, and yelled back at the inmates; Colon and Jordan had a verbal confrontation where Jordan told Colon that he would only use chemical agents on the inmates through closed cell doors rather than confront them; Colon then allegedly threatened to have Jordan beat up if he was up north; and, after this verbal altercation, Colon walked away without incident. (*Id*. at 2, 5-6).

10. Jordan did not have any evidence or knowledge to support his allegations that Colon set him up to be stabbed by Dordon or that Colon gave Dordon the weapon, and bases his allegations purely on the single alleged verbal altercation between them. (*Id*. at 2, 6). Additionally, during the sworn interviews by officers Guarino, Krosnowski, and Kovell, they stated that they had no knowledge or information that Colon set up the attack. (Def. Ex. G at 2, 6).

11. During his sworn interview, Colon denied having any verbal altercation with Jordan, denied threatening any inmate, denied setting up any inmate to be stabbed by another inmate, and denied giving an inmate a weapon. (*Id*.). Further, regarding the weapon, Officer Guarino did not know how Dordon obtained the weapon used in the attack and the fixed wing video does not reflect any evidence that Colon gave Dordon the weapon. (*Id*. at 6).

12. Ultimately, it was determined that there was insufficient evidence to sustain the two allegations that Colon set-up the attack and provided Dordon the weapon. (*Id*. at 2-4).

13. Thereafter, Colon, Officer Guarino, and inmate Dordon (FDOC# M42950) provided declarations regarding the events surrounding 02/16/07. (Def. Exhibits B, H-I).

Defendant Colon's Motion at 3-9. In addition to these averments, Defendants submit the Declaration of Xzavius Dordon, the inmate who attacked Plaintiff. Inmate Dordon acknowledges that he is currently incarcerated as a result of the stabbing incident involving Plaintiff that took place on February 16, 2007, but attests that:

> FDOC staff from Charlotte CI had no prior knowledge that this incident involving [Plaintiff] and myself would occur. Any allegation that I was involved in any conspiracy or agreement with Charlotte CI staff regarding the incident is false.

Declaration of Xzavius Dordon (Doc. #63-9) at 1, ¶3. Further, Defendants submit the Affidavit of Dr. Solorzano-Pallais and Plaintiff's medical records (Doc. #63-5). According to Plaintiff's medical records, Plaintiff received "a minor pinpoint prick that resulted in a pin drop of blood" as a result of the attack. *Id*. at 2, ¶6. Plaintiff's records do not indicate that he had any problems with "range of motion" or "flexibility of his neck." *Id*. According to Inspector McLaughlin, during her interview of Plaintiff, he "stated that he had no prior issues with inmate Dordon and did not know the reason for the attack." Exh. 63-6 at 2, ¶3C. Inmate Dordon was charged with aggravated battery, pled *nolo contendre*, and was sentenced to 9 years in prison.[2] *Id*. at 3, ¶4.

---

[2]At the time of the incident, Dordon had a tenative release date of March 10, 2008.

**B. Disputed Facts**

Plaintiff contends that Defendant Colon and Guarino had prior knowledge of the planned attack. Response at 3, ¶8. Plaintiff also denies that Defendant Guarino positioned himself between him and Dordon. *Id*., ¶6. Plaintiff provides no support, other than his own allegations, in support of his factual assertions. Indeed, in his Affidavit, Plaintiff states only that he "relies on the statement of facts and claims filed in his original complain[t]." Plaintiff's Aff. (Doc. #65-1), ¶5-6.

**C. Defendant Colon**

Plaintiff claims that Defendant Colon orchestrated the attack on Plaintiff and provided Dordon with the weapon. There is nothing in the record, other than Plaintiff's mere speculation to support a finding that Defendant Colon orchestrated the attack on Plaintiff or provided Dordon with the weapon to attack Plaintiff. Defendant Colon denies that he was indifferent to Plaintiff's safety, denies that there was an agreement or conspiracy to set Plaintiff up for an attack, and, denies having any knowledge as to how inmate Dordon opened his door, or how Dordon obtained the weapon he used on Plaintiff. Colon Affidavit (Doc. #63-2) at 3, ¶13.

The record before the Court shows that at the time of the incident Defendant Colon was "conducting rounds" and Defendant Guarino and Officer Kovell were escorting inmates to the showers and for shaves. *Id*. at 2, ¶9. Defendant Colon was present when

Dordon was handcuffed by Defendant Guarino and removed from his cell for a shave. *Id.*, at 3, ¶10. Afterwards, Defendant Guarino resumed rounds and was on the second floor of the cell block when he heard another officer yell "Get Back." *Id.*, ¶11. When he reached the top of the stairway he observed Dordon with his hands up and Defendant Guarino standing between Plaintiff and Dordon. *Id.* Plaintiff climbed the stairs, and when Defendant Colon asked him what had happened, Plaintiff stated that Dordon "stabbed me." *Id.* Defendant Colon "observed two puncture wounds on his neck which were red but not bleeding." *Id*. Defendant Colon then placed Plaintiff back in his cell and "immediately reported the incident." *Id.* Defendant Colon periodically checked back on Plaintiff until medical staff arrived. *Id.*, ¶12.

James Mitchell, the Prison Inspector, interviewed Officers Guarino, Krosnowski, Kovell, and Colon and reviewed the fixed wing camera video footage, and could not locate any evidence to support Plaintiff's allegations that Defendant Colon either planned the attack or provided Dordon with the weapon for the attack. Affidavit of James Mitchell (Doc. #63-7). Further, Inmate Dordon denies that any correctional officer conspired with him in planning the attack. Declaration of Xzavius Dordon (Doc. #63-9) at 1, ¶3.

Consequently, the Court finds that no rational trier of fact could find that Defendant Colon created, or was deliberately indifferent to, a substantial risk of harm to Plaintiff. Based

upon the foregoing, the Court finds Defendant Colon is entitled to judgment as a matter of law.

### D. Defendant Guarino

Plaintiff alleges that Defendant Guarino was aware of the planned attack and failed to protect him during the attack. Plaintiff, however, does not assert any facts or introduce any evidence which indicates that Defendant Guarino had any knowledge of the impending attack on Plaintiff. Defendant Guarino denies that he assisted in a pre-arranged attack by Dordon. Doc. #62-2 at 1, ¶3. When Defendant Guarino saw Dordon standing near Inmate Smith, the barber, he assumed that Dordon was returned for a haircut. *Id*. at 2, ¶11. Neither Defendant Guarino nor Plaintiff reacted with concern to Dordon's presence near the barber. *Id*. Inmate Smith reported to Inspector McLaughlin that "Dordon appeared playful, not threatening" when near him. Doc. #62-12 at 12. The fixed wing footage shows that neither Plaintiff nor Defendant Guarino hesitated to walk down the stairs toward where Dordon was located. *Id*. Consequently, the Court finds no evidence that Defendant Guarino had a subjective awareness that Plaintiff was going to be attacked by Dordon prior to the actual attack.

Further, the evidence refutes Plaintiff's claim that Defendant Guarino released Plaintiff's arm in order that Dordon could gain access to Plaintiff. Defendant Guarino states that he did not release Plaintiff's arm and move out of the way when Dordon

"suddenly attacked" Plaintiff. In fact, Guarino avers: (1) that he stepped in between Plaintiff and Dordon to prevent Dordon from further injuring Plaintiff; (2) ordered Dordon to drop the weapon; and, (3) broke the seal on his chemical agent cannister intending to use the chemical agents on Dordon, if Dordon failed to comply with his order. Doc. #62-2 at 3, ¶¶12-13. Other record evidence supports Defendant Guarino's testimony and refutes Plaintiff's allegations that Defendant Guarino stepped aside to permit Dordon to attack Plaintiff and/or failed to protect Plaintiff.

The overwhelming uncontested evidence reveals that Defendant Guarino affirmatively intervened on Plaintiff's behalf. The fixed wing video footage evidences that "Guardino stepped between the inmates and pushed Dordon away." Doc. #62-13 at 12. "Where the video obviously contradicts Plaintiff's version of the facts, [the Court] accepts the video's depiction instead of Plaintiff's account." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)(citations omitted). Nothing but plaintiff's conclusory, self-serving statements indicate that the video is not accurate, and this is insufficient to create a material issue of disputed fact. Inmate Smith confirmed that Defendant Guarino "moved between the two inmates." Doc. #62-13 at 12. Further, Defendant Colon testified that, when he reached the top of the step, he saw Defendant Guarino position himself between Dordon and Plaintiff. Doc. #63-2 at 3, ¶11.

Thus, Plaintiff has not shown that a rational trier of fact could determine that Defendant Guarino was deliberately indifferent to a substantial risk of serious harm to Plaintiff. Based upon the foregoing, the Court finds Defendant Guarino is entitled to judgment as a matter of law.

ACCORDINGLY, it is hereby

**ORDERED and ADJUDGED:**

1. Defendant Guarino's and Colon's Motions for Summary Judgment (Docs. #62 and #63) are **GRANTED**, and Plaintiff's Complaint is dismissed with prejudice.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions and deadlines, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, on this 7th day of February, 2012.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record